THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

MARGARET MOCK, Admx.

NEGLIGENCE—*proof must show.* Where the record fails to show that an accident on a railway train, resulting in the death of the plaintiff's intestate, was the result of any negligence or fault on the part of the company, in any respect, a judgment in favor of the plaintiff will be reversed.

APPEAL from the Circuit Court of Scott county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. DUMMER, BROWN & RUSSELL, and Messrs. KNAPP & RIGGS, for the appellant.

Mr. W. H. BARNES, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an action, brought by the administratrix of Mock, against the railroad company, to recover damages, upon the allegation that Mock's death was caused by the negligence of the railroad company. The negligence complained of is, that the gangway between the smoking and baggage car (which was the first car in the train) and the passenger car (which was the rear car in the train) was unsafe; and the theory upon which the right of plaintiff to recover rests, is, that Mock got upon the train, ascending the steps to the platform at the rear end of the smoking car, and, in attempting to pass from that car into the passenger car, by reason of the imperfection and insecurity of the passway, fell between the cars, and was killed.

The proof shows conclusively, and is not disputed, that at 3 o'clock in the morning of April 1, 1873, Mock, whose house was east of the railroad track, at Manchester, went over to the depot for the purpose of taking the train, which passed there at 3:30 in the morning, going south to St. Louis. The night

was dark, and it had been raining; he took a lantern. As the train approached from the north, he signalled the train to stop. The train was brought to a stop, but not until it had passed some two or three hundred feet (and perhaps farther) south of the depot. The train was backed up to the platform; the conductor stepped out on the platform of the depot and looked about, and, finding no one there, signalled the train to start, stepping aboard as the train went off. No one saw Mr. Mock upon the train, nor is there any direct evidence that he made any attempt to get upon the train. Leaving his house, he told his little daughter that he would place the lantern in a coal house, which was at the south end of the platform of the depot, where she could get it in the morning, and it was found in that place in the morning.

Mrs. Mock testifies that she was watching the train, from her house, when it first passed the depot, going south, and that, after it had passed, she saw the lantern on the platform of the depot, and that it then went out. In the morning, Mock's dead body was found on the west side of the track, near the rail, about 400 feet farther south than the depot. About 200 feet south of the depot, Mock's hat was found between the rails, but near the west rail; 15 or 20 feet south of that was his watch, the guard being broken, and a few feet further south was a foot-track, near the west rail, with the toe to the south. A short distance further south were indications, in the sand between the rails, of the dragging of the body, and the marks showed that the dragging was close to the west rail, between the rails.

It seems evident that, in some manner, Mock had fallen between the rails, and had been able to hang on, holding on to some part of the train until he was dragged to the point where he was killed. The circumstances in no way indicate that it is more probable that he fell from the platform between the cars, than it is that he fell from the steps of one of the cars, in attempting to board the train. In fact, it seems most probable, from the evidence, that, as the train passed the plat-

form, going south, upon its first arrival, Mock promptly put out his light, and placed his lantern in the coal house, and, when the train stopped some 200 or 300 feet further south than the platform, not anticipating it would back up, that Mock started south, on the ground, outside the track, for the purpose of getting on the train where it had halted, and that, after he had gone south some 150 feet or more, seeing the train back up, he waited until it halted in front of the platform, and then started back, and that, before he reached the platform, the train, leaving the depot, started south again, and in this condition he attempted to board the train while in motion, and got hold of the rail at the rear end of the smoking car, and failing to secure the proper foothold upon the steps, his body was swung in between the platforms of the cars, which the proof shows was the space of about two feet, and that in this movement his hat and watch were thrown upon the track. Soon after, his foot reached the ground; he made another effort to get up; the cars being in motion, he failed, and, his hands sliding down the railing at the platform and steps at the rear end of the smoking car, his body was thus dragged along the track until he encountered the guard rail, where his death was produced.

It seems probable that at the moment when Mock attempted to get upon the train, and was swung, as suggested, between the cars, the brakeman (who had, up to that time, been on the platform between these cars) was in the act of entering the car, and by the time he looked out through the door, Mock's body had dropped between the cars, and he was hanging on with his hands, but so low down as not to be seen by the brakeman.

Be this as it may, we have searched the record in vain for any evidence which tends to prove, or would warrant a jury in finding, that Mock's death was caused by reason of the imperfection or insecurity of the passway between the forward car and the rear car, or, in fact, which warranted the jury in find-

ing that his death was caused by any negligence or fault on the part of the railroad company.

It would profit no one to discuss this evidence in detail. This being the conviction made upon the mind of the court, upon an examination of the evidence, the judgment must be reversed.

*Judgment reversed.*