# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

### THIRD DISTRICT—NOVEMBER TERM, 1890.

## THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

V.

## ULYSSES G. BONNER.

*Master and Servant—Negligence of Master—Personal Injuries—Door-Latch.*

1. The extent of an employer's duty is to use ordinary care to provide machinery and appliances for the use of his employes such as are reasonably safe and fit for the purposes they are intended to serve.

2. In an action brought to recover for personal injuries suffered through the alleged negligence of a coal company in continuing the use of a defective door-latch, this court holds that the same resulted from the careless use thereof, that it was not out of repair but reasonably safe and fit for its use, and that the judgment for the plaintiff can not stand.

[Opinion filed January 30, 1892.]

IN ERROR to the Circuit Court of Macoupin County; the Hon. J. J. PHILLIPS, Judge, presiding.

Mr. CHARLES W. THOMAS, for plaintiff in error.

Messrs. GEORGE L. ZINK and JAMES M. TRUITT, for defendant in error.

Pleasants, J.   Case for personal injury to defendant in error while engaged as a driver in the company's mine No. 10 at Mt. Olive.   A verdict for plaintiff for $2,500 was returned by the jury.   Motion for a new trial denied and judgment entered upon the verdict on which this, writ of error was sued out.

The cause was tried upon the general issue to the second count of the declaration, which averred that defendant was operating a coal mine by means of a shaft, and plaintiff was in its employ as a miner therein, whose duty it was to drive a mule hitched to cars loaded with coal, along and through a certain entry thereof and through a door therein so constructed that it would close of itself when opened, and when necessarily opened was held open by a trap or latch until it was necessary to close it; that it was the duty of the defendant to keep said trap or latch in good repair, so that it would securely catch and hold the door when necessarily opened, yet the defendant negligently suffered it to get out of repair so that it would not do so, and that while plaintiff, with due care and caution, was driving said mule hitched to cars loaded with coal through said entry and door, the said door, because said trap was so out of repair, became loosened from said trap and with great force and violence closed and fell upon him and injured him as particularly stated.

It appears that the door referred to, required for proper ventilation of the mine, was six or seven feet high and about as wide, made of inch pine boards, six inches wider at the bottom than at the top and set on an incline of three or four inches to make it close of itself when open, swung on its hinges and opened inward.   In going in, the mule would push it open, but in coming out the driver would have to stop, get off, pull it open and keep it so until he passed through with his trip.   (A train of two cars or boxes is called a trip.  The boxes were about five feet each, in length.)   To keep it open there was a latch, made of two by four oak, fourteen inches long, tapering on the under side, with a notch an inch and a half deep, cut with a square corner about seven inches from the point.   It was attached to an upright post near the

wall, by a steel pin on which it worked easily, had a free slide and was so arranged that it could drop only so far. A bar fixed to the door and projecting horizontally four inches, passing under the beveled side would raise the latch and when it passed the edge of the notch the latch would fall and hold the door. A wire from its top was extended to and along the track, by means of which the driver, after passing through and without again getting off, could raise it, and the door would then close of itself.

Plaintiff had been employed in the mine for three weeks, at different kinds of work, among others, in driving for one day, during which he passed through this door many times, as the round trip was made in fifteen minutes or less. An experienced driver was sent along to instruct him in his duties, who remained with him for over two hours. On the day in question he was again driving, temporarily, in the place of one then off. He had begun at seven and was hurt at half past nine o'clock. No other person witnessed the occurrence, of which his brief account is, that having gone in with the empties he was coming out loaded, and stopped about fifty feet from the door, got off, pulled it open, pushed it back and returned to his trip. He thought about fifty seconds elapsed from the time he got off to open it until he got back to it with his trip. Just as the mule passed through, the door came to and crushed him against the box beside which he was sitting.

The proof is abundant that if the latch had not caught at all, the door would have come to before he reached his trip, and from the fact that it did catch but held only a few seconds it is claimed, as a proper inference, that it must have been somewhat out of repair.

Bonner himself, having never examined it, could not state its condition. But he introduced seven witnesses who had had experience in the use of it, some before and others after the accident. It was made and set under another company, formerly operating the mine, by a timberman still employed there, and had been in use for a number of years without any change. No defect in it, which could have caused the injury, has been

indicated by witness or counsel. To all appearance it was well adapted and entirely sufficient for its purpose, if used with reasonable care. No complaint of its failure in operation was ever before made or reported to the defendant. All the witnesses for the plaintiff, with perhaps one exception, agree that if it fairly caught it would certainly hold the door.

Duncan Wood, who drove in that entry a week, some time after the accident, testified as follows: "The latch, when I went through it, if I steadied it, it would hold. The mule opened the door with his head, and if I didn't steady it, it would come unlatched again. It would wobble when you put your hand back. The latch was sufficient to hold the door if it was steadied and kept from wobbling. The cars going through would not affect it. The latch would not hold if you pushed the door open against it without steadying the door. When I was going out, if the door was shut I ran ahead and opened the door and pulled the latch down to hold it. After I got through I pulled the rope (wire) and this raised the latch and the door fell to. If you knew this you would not have any trouble. * * * I never called the attention of the boss or anybody else to that latch." On cross-examination he said: "The first time I opened that door I could see the latch wouldn't hold. When it didn't hold it went shut right away. You could tell at once when you shoved the door back against the prop." This statement would seem to show that when he said it wouldn't hold, he meant that it wouldn't catch; for if it did, the door would not "shut right away." Other witnesses manifestly use the words "hold" and "catch" interchangeably in several instances. If Wood meant to say that he never knew it to let go a fair hold, he claimed to know more than any other. They all agree that if it fell or was put down fully, it always held, and he only adds, "if it was steadied."

It was shown that sometimes it failed to catch or get any hold. For such failure, when it occurred, the testimony discloses two clauses. If the wire was jerked too suddenly or violently it might cause the latch to stick or bind, or raise it too high, and it would fail to fall. If the door was pushed back too violently, the latch might not fall quickly enough to

Consolidated Coal Co. of St. Louis v. Bonner.

catch the rebounding bar.    Several of the witnesses speak of
these causes, but no one mentions any other.    In these cases,
however, there would be but little danger to the driver,
because the door would come back immediately.    Going in,
on the mule's opening, he would be safely through before it
could reach him, or see it in time to protect himself, and
going out, on his own opening, it would come back before he
could return to his trip and drive to the place of exposure.

A more real and yet a remote danger was that it might so
catch as to hold for a little time—until the driver should be
exposed—and then let go, as in this case.    So far as we can
see from the evidence this would happen only where the fall
was arrested before completion, by the pressure of the return-
ing bar—as where the door was not pushed far enough beyond
the notch, or was slammed too violently to give time for it to
fall fully.    For if it began to fall, the momentum thus acquired
would insure its completion, unless arrested by something out-
side of itself.    The testimony points to nothing of this kind
but the door.    Its weight and inclination was a considerable
force constantly acting.    If it caught the latch falling it would
stop it.

The liability to this condition, rarely as it would be likely
to occur, seems to have been understood by all the witnesses
who used the latch; for they all took care to see that it went
down fully.    If it did not so fall of itself, they put it down
with their hands; and in no such case did it fail to hold.
How plaintiff dealt with it is pretty clearly shown by the fol-
lowing, taken from his own statement in chief : " Q. Tell the
jury, if you opened the door, how you opened it and what you
did with it.    A. I opened it—of course supposed I pushed
it back—opened the door and pushed it back and went and
got on my trip.    The mule passed through the door, and as
the mule passed through the door came shut, which it ought
not to have done, and I was catched."    Evidently he did not
follow the door as he pushed it, nor go to the latch nor take
any care to see how it had caught, if he waited to see that it
had caught at all.

It did catch, however, which proves that it was not bound,

but was operating according to its design. The strength of plaintiff's case lies wholly in the naked fact that though it caught, it did not hold the door. No attempt was made to show any particular fault or defect in the latch as the cause of this failure, nor was any suggested in the argument. The declaration does not allege fault in its original construction— in the plan, material, make or adjustment of it; but the sole charge is that "the defendant carelessly and negligently permitted the said latch to get out of repair, so that it would not securely catch and hold said door open when the same was necessarily opened." Yet no change whatever was shown to have taken place in it since it was first set up. The evidence is positive and clear that none had taken place. By the accident in question the door was broken and it was repaired, but nothing was done to the latch. No occasion for any repair of it was discovered, and it continued to be used up to the time of the trial, just as it was before and at the time of the accident. If the wobbling of the door ever loosened its hold, that was no fault of the latch, and the declaration does not complain of the door. The averment that the latch itself was so out of repair that it would not securely catch and hold the door is supported only as matter of inference from the mere fact that in this instance it did not. This inference is not fairly deducible from that fact alone. There should be further proof, or some ground for the presumption that it was not prevented by some cause outside of itself; that it had, under the obvious conditions, a reasonably fair chance so to catch and hold.

We think there is no such proof in this record, and that if such a presumption might be indulged in the absence of proof, it was fully overcome by the facts here shown. The undisputed evidence in our judgment clearly establishes the following propositions:

First. The latch was so made and adjusted that when raised it would promptly fall by its own weight, unless it was raised so far as to be balanced on the pin, or prevented by some cause outside of itself. Second. In this instance it was not so balanced nor otherwise prevented. Third. Whenever it began

to fall it would fall as far as was designed by its arrangement, the full depth of the notch, below the top of the bar, unless arrested by some force or cause external to itself. Fourth. When it so fell over the bar, it invariably held until it was purposely raised. Fifth. Its fall might be arrested before its completion by the returning bar.

These propositions strongly oppose appellee's theory, which is, that though it had a fair chance it failed, through some defect in itself, to catch as fully as it ought, or having so caught, let go its hold. We find in the record no evidence which to our minds reasonably supports that theory as against these propositions. The most consistent if not the only rational explanation of the unfortunate event, seems to us to be found in the supposition that appellee failed to push the door far enough, or slammed it too violently to give the latch time to fall fully before its return; that the latch therefore barely caught the bar on its edge; that this slight hold stayed the door while at rest, but was broken by its vibration caused by the weight and motion of the loaded trip as it came near.

Appellee himself says: "I couldn't say whether the cars jarred it loose or not. It looked to me as if something of the kind had not been it would have come shut and catched the mule." But his witness, Wood, said that if it was fully down the cars passing through would not affect it. That statement is confirmed by the experience of all the others. They had to pull the wire, after passing through, in order to raise it. The inference must be that on this occasion it was not down, and the only reason suggested by the evidence is that it had not time so to fall. This does not imply any defect in it which appellant's duty required it to remedy, since it may as well have been due to an improper manner of opening the door. It may be true that the company could have provided a better latch, one that would act more certainly and promptly and with less attention on the part of the driver. But it was not bound to provide the best. The extent of its duty was to use ordinary care to provide one that was reasonably safe and fit for the purpose it was intended to serve. Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Cooley on Torts, 557, and cases

cited in note. Here a very rude and simple contrivance might be such. The evidence shows that this latch was all that could be reasonably expected in such a place for such a purpose. We doubt if a single juror who joined in this verdict, in the place of the company and with knowledge of all that was proved as to its character and condition, would have thought for a moment that any change or repair was required to make it reasonably safe and fit for its intended uses. The whole arrangement of door and latch, obviously called for attention on the part of the driver to see that the latch caught as it was designed to catch. Appellee understood this arrangement. He knew the latch was to hold a heavy door strongly inclined to shut of itself, and exposed to be jarred by the passing trip. Common sense and ordinary care would dictate the precaution to see that it got a good hold; for common experience teaches that latches generally are liable to stick, and for other reasons sometimes fail to catch or to catch sufficiently even against an ordinary door that is slammed or not pushed clearly beyond the notch.

Under the issue made by the pleadings, the burden was upon him to show affirmatively, by a preponderance of the evidence, not only that in this instance it did not, but that though he used it with ordinary care, it would not, by reason of being itself out of repair, securely catch and hold the door; that it was so out of repair through the want of ordinary care on the part of the company, and that the defect was the proximate cause of his injury. A failure to so establish either of these propositions should prevent a recovery.

We are clearly of opinion that the opposite of each of these is at least no less consistent with all the evidence. It just as strongly tends to prove that the latch generally did catch and hold, was not out of repair, and was reasonably safe and fit for its intended use; that therefore there could have been no negligence on the part of the company, and that appellee's injury is to be attributable directly to his careless manner of opening the door.

In such case the law is, as stated in Smith v. The First National Bank, 99 Mass. 605, that "Where the evidence

tends equally to sustain either of two inconsistent propositions, neither of which can be said to have been established by legitimate proof, a verdict in favor of the party bound to maintain one of these propositions against the other is necessarily wrong." See also C. & A. R. R. Co. v. Mock, 88 Ill. 87. Considering the measure of the duty resting upon it, we think the evidence largely preponderates in favor of the appellant on all these issues. Had just such a latch been provided to hold open a farm gate which closed by a weight, and failing to hold it when opened in like manner, the gate had come to, and by frightening the team or otherwise, injured the hired driver who thus opened it, would the jury by their verdict have given him the old man's farm? Yet the measure of defendant's duty would be the same in that case as in this. It applies alike to farmers and mechanics, to individual employes in small industries, as to proprietors of large plants and wealthy corporations. If the latch would have been good enough in that case, impartial justice must hold it to have been so in this.

For the reasons above stated, we think this verdict should have been set aside, and because it was not, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*