## Chicago City Railway Co. v. Bridget Roach.

1. NEGLIGENCE—*Rate of Speed —Grip Cars — Crowded Streets.*— Whether a rate of speed equal to six miles an hour, in the streets of a city crowded with teams and people on foot, is negligence on the part of a cable car company, is a question dependent upon the surrounding circumstances, and is for the determination of the jury.

2. Instructions—*Court Not Bound to Repeat.*—A trial court is not bound to repeat instructions.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Cook County; the Hon. Edmund W. Burke, Judge, presiding. Verdict for plaintiff, $2,000. Remittitur for $500. Judgment for $1,500. Appeal by defendant. Heard in this court at the October term, 1897. Affirmed. Opinion filed June 13, 1898.

## Statement.

This suit was brought by appellee to recover for personal injuries received through alleged negligence of appellant. The negligence charged was in moving a train of appellant on Lake street at its intersection with State street, in Chicago, at a high and dangerous rate of speed.

Appellee had been traveling south on the east side of State street, and had stopped at Lake street and stood at the northeast corner of the street crossing beside a police officer who was stationed there. Appellee waited there for an opportunity to cross Lake street. There were teams upon Lake street, some passing and some standing in front of stores. One team, driven by the witness Benson, was trying to proceed east on Lake street, and was prevented by other teams standing or moving ahead. This team, when prevented from going further, was near to the curve of the car tracks, either west of the curve or south of the curve, as variously stated by witnesses, but not so near that a car might not have passed it. The police officer ordered the driver of the team to cross over to the other (north) side of Lake street. The driver undertook to obey, and while turning to cross over, the rear of the wagon was brought near enough to the curve of the track of the appellant to be struck by a train which was approaching on Lake street from the east and was passing over the curve from Lake to State streets. The wagon thus struck by appellant's train was thrown against appellee, and she was thereby injured. The only evidence as to the speed of the train would show that it was going at the rate of about six miles an hour. The police officer testified as to the accident as follows:

"Shortly before nine o'clock there was a west-bound Cottage Grove avenue car in Lake street, and at the time it started from Wabash avenue there was a team with a load of heavy merchandise, of hardware, backed up at Markley-Alling's hardware store, which I should judge is about sixty feet east of crossing on south side of Lake Street. Between there and curve of Chicago City Railway Company's tracks there would be room for about four wagons, and at that time space was filled up with wagons. A man driving a wagon belonging to Alston Manufacturing Company, coming from the west, was on the right side of the street; came along as far as curve. Could not get any further on account of wagon that was ahead of him. Car was approaching, and so as to leave car go by and prevent blockade, I ordered the man to come across on the other side of street—go down on left side north of Lake street. In attempting to do so the grip car struck wagon and as result of its striking wagon Mrs. Roach was knocked down, and I received a little injury myself. First saw wagon marked 'Alston Manufacturing Company' when it pulled over the tracks on the south side of Lake street going east. It was a single truck—one-horse wagon. Name of driver is John A. Benson. I ordered the man to go on the other side of the street; then signaled the gripman to stop; held up my club in regular manner that we have for stopping teams and cars—and whistled at him. Gripman at this time was about thirty feet from wagon. There was nothing between me and gripman. When I told teamster to pull over, he did so, and the middle of the wagon had got about on the further (north) track when the gripman struck it. I had a team stopped coming west to leave those people, Mrs. Roach and a few others that were standing there, cross the street. That team was standing east of Lake street crossing, near the sidewalk. When I ordered this man out there was a double team coming in ahead of him going east. He could not for that reason get out probably as fast as he might. Wagon at the time it was struck was moving very slowly."

T. W. Wittler testified: "Saw her standing beside policeman on the crossing. There was a wagon in the way. There was one wagon going west and another going east, and I was waiting for them to pass when a cable train came along and struck the wagon that was standing directly in front of cable train on track close to curve. Hit it so hard that it slewed around and struck this Mrs. Roach and policeman, knocking Mrs. Roach down and policeman up against wheel of another wagon. Saw Mrs. Roach lying on street in front of wagon going west, within about a foot of front wheel, and I saw some one pick her up and take her into Pitkins & Brooks' store. That is all I saw of the accident. She appeared to be unconscious and her face was bloody. I paid no attention to direction of traffic. Grip car, after it struck wagon, went around curve and crossed crossing on south side of Lake street. When I first saw the car I should judge it was about sixty feet from wagon. The car coming came at full speed, in my opinion. Saw it all the time from time I first saw it until it struck the wagon. When I first saw the wagon think the car was ten or twelve feet from it. I think the rate of speed was about six miles an hour then."

Benson, the driver, testified: "There was some people standing on the crossing. Officer put his club toward the car, and then made a motion to me. He came over a couple of steps and said: 'Pull over on this side.' So I pulled over cornerways to the curve; then got by; got my front wagon at track over to sidewalk, and there was another team coming next to curb, on north side of State street; then there was another team ahead of me going east; I seen I could not get out there, and so I hollered to the gripman, 'Hold on.' Then he was about fifteen feet away from my wagon, and took my hind wheel; he was about fifteen feet from point of wagon; struck hind wheel; threw wagon over; in the place I was when the officer called me the car could clear me all right."

Evidence was presented by appellant to show that at the time Benson turned his wagon north, in obedience to the

command of the police officer, his wagon stood on the tracks of an old and abandoned portion of the railway of another company. It is claimed that in turning to get out of this track the rear of the wagon slid to the east by reason of the rails, and that thereby the collision was caused.

As to the injuries of appellee, there was a conflict in the evidence. There is no question but that some injury was sustained. Aside from the conflicting evidence as to other injury, it seems to be conclusively established that there is an injury to the knee not yet cured, and which the jury were warranted from the evidence in finding to be incurable. Appellee is about sixty years of age. Dr. Bradley, a witness for appellee, testified: "Examined her again about three weeks ago, and found more or less weakness in the knee joint, with apparent loosening of ligaments and relaxation of joints, so that there was an abnormal lateral motion. I believe the injuries are permanent; won't say with regard to eye, but with regard to knee."

Dr. Moyer, a witness for appellant, testified: "I should expect that the condition of the knee might make it a little uncertain on an uneven surface. I would attribute this condition of the knee to injury five years ago. Proper treatment would probably cure that knee, but left to itself in a woman of her age, it will not get well without treatment."

It is undisputed that, as a result of the injury, appellee has a permanent scar upon the forehead. Dr. Moyer testified: "She has a scar over the right eyebrow, extending to the inner side of the upper lid, but not going down to any extent on the lid; it then extends upward on to the forehead about one and a half inches; then there is a branch in the upper part of that going to the right, so that it is a little star-shaped; that scar has been made by merely cutting into the skin; the bone itself has not been injured beneath the scar; it is a narrow, white scar such as is made by a simple cut in the skin."

The trial resulted in a verdict for $2,000, from which $500 was remitted by appellee and a judgment entered for $1,500.

WILLIAM J. HYNES and JAMES W. DUNCAN, attorneys for appellant.

FRED H. ATWOOD, FRANK B. PEASE and C. E. CRUIKSHANK, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by counsel for appellant that the verdict is against the weight of the evidence. In this behalf it is urged that it appears from the evidence that the collision was caused by carelessness of the police officer, who directed the driver, Benson, to cross to the north side of Lake street; or by the carelessness of Benson in obeying the command when he was in a place of safety; or by the old track of the West Chicago Street R. R. Co., in which it is claimed Benson's wagon stood before turning north, the rails of which track, it is argued, caused the rear wheels of the wagon to slide along to the east as the horses and the front wheels turned north, and thus brought the rear of the wagon into dangerous proximity to the curve of appellant's tracks. It is also argued that appellee caused the injury through her own negligence in placing herself, it is claimed, in a position of danger. And, finally, counsel urge in this behalf that to move a train at the rate of speed shown by the evidence here can not be held to constitute any negligence.

The answer to all of these contentions is, that they together presented for the determination of the jury, upon the evidence here, two questions only, viz.: Whether there was negligence of appellant in moving its train at the speed shown, which operated as a proximate cause of the injury, and whether appellee was guilty of any contributory negligence. We are of opinion that the evidence warranted the jury in finding, as to each of these questions, favorably to appellee's right of recovery. The jury might well find that appellee, in choosing a place by the side of the policeman stationed at the crossing, while she was waiting an opportunity to cross over Lake street,

was not only not guilty of any contributory negligence, but
was in the exercise of very commendable care. That appel-
lant was guilty of negligence in moving its train at that
place and under the conditions there existing, at the rate
of speed shown, was also a fact which the jury might have
found from the evidence.

Whether such rate of speed constituted negligence was a
question dependent upon the surrounding circumstances,
and was a question for the determination of the jury. The
C. C. Ry. Co. v. Robinson, 127 Ill. 9; Rend v. C. W. D. Ry.
Co., 8 Ill. App. 517; W. C. St. R. R. Co. v. Stoltenberg,
62 Ill. App. 420.

In the case last cited, it appeared that the car was
moving "About as slow as a man would walk." This court,
in passing upon the question of negligence there raised,
said :

" Under the circumstances of the accident, the gripman
being unable to tell that no one was waiting to come imme-
diately from behind the wagon upon the crossing, it was a
question for the jury whether appellant was not negligent
in permitting its car to move toward the cross-walk at a
rate of speed that prevented its being stopped ere it ran
upon deceased."

Whether the gripman saw, or, if properly attending to
his duty, should have seen the signal of the policeman;
whether the wagon swung into the way of the train so
suddenly that a collision was unavoidable if the car was
moving at any rate of speed; and whether the occupancy
of the streets by teams was such as to make it the duty of
the gripman to proceed with great caution and at such a
slow rate of speed as would enable him to stop his train
within exceedingly short distances, were all questions of
fact upon which the jury passed in determining the negli-
gence of appellant, and its relation as a proximate cause of
the injury.

The evidence being sufficient to sustain the finding that
appellant was negligent as charged, and that such negli-
gence was a proximate cause of the injury, the negligence

of the policeman or of Benson, the driver, if concurring, could not excuse appellant.

The only instructions given which are complained of in the briefs are three, which are numbered 1, 2 and 3 for convenience:

1. "You are instructed as a matter of law that the question of whether or not the plaintiff exercised ordinary care for her personal safety before and at the time of the occurrence of the injury complained of, is a question of fact to be determined by you from the evidence.

2. "You are further instructed as a matter of law that the question of whether or not the defendant was guilty of negligence is for your determination upon all the circumstances and facts proven in the case.

3. "You are instructed as a matter of law that if you find from the evidence that the defendant has been guilty of negligence, and that such negligence caused the injury to the plaintiff complained of in the declaration, and that before and at the time of such injury the plaintiff was in the exercise of ordinary care for her personal safety, then your verdict will be for the plaintiff."

The first and second of these instructions are undoubtedly correct as statements of the law, even if subject to the criticism invoked of giving too much emphasis to the power of the jury. We do not understand the decision in C. B. & Q. R. R. Co. v. Greenfield, 53 Ill. App. 424, as holding that the giving of such an instruction constituted reversible error.

No particular is pointed out by counsel wherein the third of these instructions is faulty, nor do we discover any. In support of objection to it, the case of N. C. S. R. R. Co. v. Louis, 138 Ill. 9, is cited. Upon examination of that decision, we find nothing to support the objection. In the case under consideration the jury were very fully instructed as to the burden of proof and the rule requiring a preponderance of the evidence.

It is complained that the court erred in refusing to give the following instructions, which we refer to as numbers 1 and 2:

1. "You are instructed, as a matter of law, that if you find from the evidence that the plaintiff in this case is entitled to recover, you should assess her damages at such a sum as would be a just compensation to the plaintiff for the injury sustained as shown by the evidence in the case.

2. "If the jury believe from the evidence that the injuries complained of were received as the result of the acts and doings of the policeman and the driver of the wagon, and without any want of ordinary care on the part of the gripman, then it is the duty of the jury to find in favor of the defendant."

The court properly refused each of these instructions, because each was sufficiently included and covered by other instructions given. The jury had been told that no exemplary damages could be awarded, and that such elements of damage only could be considered as had been shown by a preponderance of the evidence. They had also been instructed that if there was no want of ordinary care on the part of the gripman, and the accident happened as a result of circumstances over which he had no control, then there could be no recovery. The court was not bound to repeat these instructions.

It is complained by counsel for appellant that the court erred in ruling upon the admission of certain evidence. There was no error in permitting Dr. Moyer to testify as to the condition of the eye. If appellee had abandoned all claim by reason of any permanent injury to the eye, yet that did not preclude proper inquiry as to temporary conditions, if related to the injury in question.

The exclusion of an answer to the following question was excepted to :

"Standing where you say the car was, state whether or not, if the rig had remained as you saw it at that time, whether there was room for the car to pass without touching it?"

No harm could have resulted from its exclusion, for the witness was permitted to show the projection of the car over the rail and the distance of the wagon from the rail.

Moreover, it was established by Benson, a witness for appellee, that there was room for the car to pass before Benson moved to the north.

An answer to the following question was excluded:

"You made those answers on the proposition of fact assumed by him in his questions?"

There was no error in such ruling, for the witness had already indicated that he did so base his answers, and there was no occasion for repeating.

In view of all the evidence as to the nature of appellee's injuries, we are of the opinion that the judgment is not for an excessive amount.

The judgment is affirmed.