## Chicago, Burlington & Quincy R. R. Co. v. Harriet F. Greenfield, Administratrix of the estate of George Greenfield, Deceased.

1. NEGLIGENCE—*Care and Diligence.*—In an action to recover damages for a death resulting from negligence, the burden is upon the plaintiff to show that the deceased, at the time of the accident which resulted in his death, was in the exercise of ordinary care to avoid it.

2. SPECIAL FINDINGS—*Ordering More Specific Answers.*—Where special interrogatories relate to evidentiary facts tending to prove a matter which would not, as a matter of law, necessarily control the general verdict, it is not error to refuse to re-submit them for more direct answers.

3. CARE AND NEGLIGENCE—*Questions of Fact.*—Whether the deceased exercised ordinary care, and whether the defendant was negligent, are questions of fact to be decided by the jury, under the guidance of the

court in its instructions, according to the established rules of law regulating the rights and duties of the parties, and defining care and negligence.

4. COMPARATIVE NEGLIGENCE—*Exercise of Ordinary Care.*—An instruction upon the doctrine of comparative negligence which omits the essential element that the deceased was in the exercise of ordinary care f r his own safety at the time he was killed, is erroneous, as directing a finding irrespective of that question.

5. SAME—*Ordinary Care for One's Safety.*—The rule of comparative negligence has not changed or modified the general rule requiring proof that an injured person was in the exercise of ordinary care for his own safety.

Memorandum.—Action for personal injuries. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the December term, 1893, and reversed. Opinion filed May 22, 1894.

The opinion states the case.

HOPKINS, ALDRICH & THATCHER, attorneys for appellant; O. F. PRICE, of counsel.

S. B. STINSON and ALSCHULER & MURPHY, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellee, as administratrix of the estate of her deceased husband, George Greenfield, brought this suit against appellant to recover damages on account of his death, caused by a train of appellant at a street crossing in the city of Sandwich, on the evening of August 6, 1892. The declaration contained four counts. The negligence charged in the first count was the failure to keep a flagman at the crossing to give warning of the approach of the train, as required by an ordinance of the city providing that such flagman should be stationed there between the hours of seven o'clock A. M. and ten o'clock P. M. The second count alleged that the death of Greenfield was due to the omission of the defendant to erect at the entrance of the railroad within the city a sign board having the words " Stop speed," " Ring bell," legibly painted thereon, as required by an ordinance of the city.

The third count charged that it was the duty of the defendant
to have kept and operated gates or other appliances at the
crossing to prevent persons from going on the tracks when
trains were passing and also to have kept a flagman there to
warn persons, and charged neglect in both these particulars.
The fourth count charged that the train in question was
run at an unreasonably unsafe rate of speed. Each count
averred due care on the part of the deceased. A plea of
the general issue was filed and a trial was had at which the
evidence established the following facts: The injury oc-
curred a few minutes after nine o'clock in the evening of
August 6, 1892. At that time the Knights Templar were
about to hold a conclave in the city of Denver, and they
were being carried over defendant's railway in special trains
which were decorated and indicated the particular com-
mandery on each train. Several of these trains had passed
through Sandwich on the previous day, and one or more
had passed on that day prior to the train in question. Many
people had been out watching the trains as they passed, and
the deceased, who was a tailor and had a shop near the
tracks, was aware of the special trains, and had been
watching them to see the decorations.

The train in question was one of the special trains. It
had five passenger coaches, and was running at about the
rate of regular through passenger trains on that road. There
were double tracks, and it approached Sandwich on the
north main track. At Main street, where the accident
occurred, the tracks crossed the street nearly at right angles,
and there were two side tracks south of the main tracks.
The distance between the center of the north main track on
which the train was approaching, and the center of the south
main track was fourteen feet. The distance from the center
of the south main track to the center of the first side track
south of it was twelve feet and nine inches, and the distance
from the center of the latter track to the center of the south
side track was twenty-three feet and nine inches. The
deceased came from the direction of his residence south of
the tracks, and was going toward his shop which was on the

north side. There was a car standing east of Main street on the south side track, but after passing that track there was a space of about forty-five feet unobstructed and from which the train could be seen for more than a mile by one crossing that space to the track on which the train was coming. The bell on the train was ringing and the whistle was blown several times before the train reached the depot, which was six hundred and eighty feet east of Main street. The train and the whistling attracted the attention of the people in the vicinity, and a good many of them gathered on Main street about the tracks to see the train go by. The · evidence as to the accident came from those people and there was no conflict in their testimony that the train was in full view of the deceased while he crossed the open space from the south side track to the north main track. The evidence was that he started across that space with his head bent down looking at the walk in front of him, and that at some point he glanced up toward the east and increased his speed. There was a disagreement among the witnesses as to where he quickened his pace and the rate of speed, varying as to the point from the north main track to a point twenty-seven to thirty feet south of it, and as to the rate from a fast walk to a run. He was nearly over the track when he was thrown to the ground and injured so that he died very soon after. There was an ordinance requiring a flagman at the crossing from seven o'clock A. M. to ten o'clock P. M., and there was no flagman stationed there. Instead of providing a flagman the defendant had placed gates at the crossing, such as are generally used in cities, which were operated in the daytime so as to close the street by bars when trains were passing, but which were not operated at night. The train was running at the rate of about thirty miles an hour.

The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at one thousand dollars, and also returned questions which had been submitted to them, together with their answers thereto, as follows:

1. Was there anything to obstruct the view of the train approaching Main street from the east to deceased, as he was

passing north from the south switch track, at any point between that and the north main track?

Answer. Nothing except a car on the side track.

2. Was there anything on the right of way that obstructed the view of the deceased and prevented his seeing the incoming train, if he had looked east down the track, at any point on the railroad right of way, at Main street, south of the north track, and north of the south switch track?

Answer. Nothing except a car on the side track.

3. Could the deceased, by the exercise of reasonable care and caution for his own safety, have seen the train in time to avoid the accident?

Answer. Under the circumstances he might or he might not.

The defendant thereupon moved the court to require the jury to return specific answers to said questions, but the court denied defendant's motion, and received and entered said special findings as returned. The answers returned clearly manifest the intention of the jury to award the general verdict regardless of the undisputed and controlling facts touching the exercise of care by the deceased and to evade that question. The car on the side track mentioned in the answers to the first two questions was on the south side track, and there was not a particle of evidence tending to prove that it was within the limits stated in the question. The testimony of all the witnesses without exception was that there was no obstruction whatever between the points named, and the jury could have found no reason in the evidence for mentioning the car, but such reason must be found elsewhere. The first two questions, however, only related to evidentiary facts tending to prove negligence on the part of the deceased and which would not, as a matter of law, necessarily control the general verdict; and as the court could not have been required to submit them at all, there was no error in refusing to resubmit them for more direct answers.

Before the plaintiff could recover, it devolved upon her to prove that the deceased, at the time of the accident, was in the exercise of ordinary care to avoid it. C., B. & Q. R.

R. Co. v. Johnson, 103 Ill. 512; Calumet Iron & Steel Co. v. Martin, 115 Ill. 358; Hawk v. C., B. & N. R. R. Co., 147 Ill. 399. The third question submitted to the jury the proposition whether he was in the exercise of such care. There was no evidence that defendant or its servants were guilty of negligence so gross as to amount to a willful disregard of the rights or safety of the public, nor is any such claim made; and in such case if the deceased, by the exercise of ordinary care, could have seen the train in time to avoid the accident, and did not do so, his failure would bar a recovery. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132. The burden of proving the exercise of such care was upon the plaintiff, and if she failed to prove it she could not recover. The answer of the jury that by the exercise of reasonable care and caution for his own safety the deceased might or might not have seen the train in time to avoid the accident, was equivalent to a finding that the exercise of such care on the part of the deceased was not proven; but the defendant had a right to a direct answer to the question, and it was error to refuse its request for such an answer.

The fourth instruction given on behalf of plaintiff was as follows:

The jury are instructed that the questions of care or want of care, and the negligence or want of negligence of the defendant and of the deceased, are questions of fact for the jury to decide under all the evidence in the case and all facts and circumstances as shown by the evidence.

It is true that the questions, whether the deceased exercised ordinary care, and whether the defendant was negligent, were questions of fact to be decided by the jury in the case, but they were to be decided under the guidance of the court in its instructions according to the established rules of law regulating the rights and duties of the parties and defining care and negligence. The only tendency of this instruction would be to impress upon the jury their supremacy upon those questions. It could not in any way aid the jury in applying any rule of law to the facts, or in determining upon a proper verdict, but might be readily under-

stood as a declaration of their independence on those questions. It was unnecessary, could serve no good purpose, and was misleading in its character.

The sixth instruction for plaintiff was as follows: The jury are instructed that even though they believe from the evidence that the deceased was negligent, and that such negligence contributed to the accident, yet, if you further believe from the evidence that the negligence of the deceased which contributed to the accident was slight, and if you further believe from the evidence that the defendant was also guilty of negligence contributing to the accident, and that such negligence on the part of the defendant was gross, then upon the question of negligence, the jury should find for the plaintiff.

This instruction directed a finding for the plaintiff on the question of negligence in case the jury should find the facts as stated, and it omitted the essential element that the deceased was in the exercise of ordinary care for his own safety at the time he was killed. The jury were not authorized to find for the plaintiff unless that fact had been proven, and the instruction was bad in directing such a finding irrespective of that question. The rule of comparative negligence has never changed or modified the general rule requiring proof that an injured person was in the exercise of ordinary care for his own safety. Calumet Iron & Steel Co. v. Martin, 115 Ill. 358.

Upon the question whether the deceased was in the exercise of such care as has always been held absolutely essential to a recovery by the plaintiff, the evidence admits of but one conclusion. If the witnesses who testified that he undertook to reach and cross the track before the train were correct in their version of the occurrence, there would be no room for argument as to the effect of such conduct. Assuming, however, that he was not aware of the approach of the train until it was too late to escape it, there can be no doubt that he negligently walked into open and apparent danger without giving the slightest heed or attention to his surroundings. Nor was there anything to excuse his lack of

C. & A. R. R. Co. v. Jones.

attention to the danger. He was perfectly familiar with the situation and was in the habit of crossing the tracks at that place six or more times daily. He knew that no flagman was kept there and that the gates were not operated at night, and therefore had no reason to rely upon notice from a flagman or upon being kept off the tracks by gates. It is suggested that he might have been confused by the headlight of the engine on a freight train that stood north of the depot buildings, but that train was not so situated that he could have been deceived or misled by it if he used ordinary care. That train stood still on a side track north of the main tracks at such a distance that the depot buildings were between it and the main tracks. Its headlight was more than a block east of the crossing, and that train in no manner interfered with the view of the special train which in its approach came between the deceased and the freight train. He knew that special trains were passing from time to time, and he could see those who had gathered to see this one pass. They all saw and heard it, and there is no reason apparent why he could not have seen and heard it.

There is no escape from the conviction that the accident was due to his own negligence, and for such an accident the plaintiff was not entitled to recover damages. The judgment will be reversed.