## E. A. Potter, Receiver of the Calumet Electric St. Ry. Co., v. Oscar Sjorgren.

1. PLEADING—*What the General Issue in Actions on the Case for Personal Injuries Admits.*—A plea of the general issue to a declaration in an action for personal injuries charging the operation of a railroad by the defendant obviates the necessity of proving such matter.

2. ORDINARY CARE—*No Recovery Without.*—In an action for damages resulting from personal injuries, unless the testimony and all proper inferences deducible show that the plaintiff was in the exercise of due care for his personal safety, his right to a recovery must fail.

Trespass on the Case, for personal injuries. Error to the Superior Court of Cook County. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed November 8, 1900.

KENESAW M. LANDIS, attorney for plaintiff in error; SOL. ROSENBLATT, of counsel.

SETH F. CREWS and RALPH CREWS, attorneys for defendant in error.

Potter v. Sjorgren.

Mr. Presiding Justice Shepard delivered the opinion of the court.

The record presents to this court for review, a judgment for $5,000, recovered by the defendant in error in a suit brought by him for damages by reason of being thrown from his wagon in consequence of being run into by an electric car. A point argued at much length in behalf of the plaintiff in error will be first considered. That contention is that there was a failure by defendant in error to show that at the time of the accident the railway was possessed and operated by the receiver, as alleged in the declaration. (It may be stated, historically, that the suit was begun against John C. McKeon, receiver of the railway; that he was succeeded by John McNulta, who died after the cause came to this court, and Potter, the present plaintiff in error, his successor, was substituted in his place.)

It is expressly admitted in the brief for plaintiff in error that at the time the suit was brought and summons served and judgment recovered, the said Calumet Street Railway Company was in the hands of the receivership (though under different receivers).

The declaration alleged that the "defendant receiver of the Calumet Electric Street Railway Company was then and there possessed of and operating a certain line of street railway," etc., describing it, "and then and there drove and operated over and along said street railway, divers electric street cars, so called, and the electric street car hereinafter mentioned."

To the declaration, McKeon, the first receiver, filed a plea of general issue, and upon the issue thus joined the cause was tried. Appellant expressly concedes "that by pleading the general issue to an action the defendant admits the capacity in which he is sued." The contention is that the plea goes no further—that it does not admit that at the time of the accident the railway was possessed and operated by the defendant. This court held in Richter v. Cicero and Proviso Street Railway Company, 70 Ill. App. 196, that a plea of the general issue to a declaration that

alleged the running and operation of the car and railway in question, by the defendant, obviated the necessity of proving such alleged facts. That decision was based on McNulta, receiver, v. Lockridge, 137 Ill. 270, which seems to be conclusive against the contention here made.

The principal remaining question is, whose negligence was the proximate cause of the injury suffered by the defendant in error? The jury, by proper intendment of their verdict, have found that the defendant in error was free from negligence at the time of the injury, and that the plaintiff in error was guilty of the negligence charged in the declaration. Is that conclusion of the jury so clearly wrong, under the evidence, as to require us to reverse the judgment and remand the cause? A majority of the court (not including the writer) thinks it is.

In the evening of July 21, 1897, about nine o'clock, when it was ordinarily dark, the defendant in error was driving a team and loaded wagon south on Cottage Grove avenue, near Eighty-seventh street. The wagon was loaded with two long timbers. The distance between the front and hind wheels of the wagon, as geared, was forty feet. There were two car tracks at the point in question—the west one being used for south-bound cars, and the east one for north-bound cars. The distance from the outside rails of the tracks to the curb of the street on the sides next to them, was about ten feet—thus affording a clear street space of that width on either side of the track. While defendant was driving south on the west or south-bound track, a south bound car came up behind him and the motorman "rang him out of the track." Thereupon the defendant in error drove to the east, out of the track he had been traveling in and across the east or north-bound track, and the south-bound car passed along. From this point the theories or contentions of the parties differ.

Counsel for defendant in error states his theory of what happened afterward, thus:

"He stopped in that position for a moment to let the south-bound car pass him, and after it had passed and just

Potter v. Sjorgren.

as he was beginning to attempt to regain his position in the south-bound track, a north-bound car bore down upon him, running at a high rate of speed, and crashed into one of the horses driven by defendant in error, instantly killing it, and then proceeded onward until it hit the hub of the rear wheel, which stopped the car. The force of the collision hurled Sjogren from the wagon, and when he realized what had happened he was lying down in the ditch east of the tracks with his right leg broken about half way between the ankle and the knee."

The theory of the plaintiff in error is stated by his counsel as follows:

" The theory of the defense was that Sjogren had gotten the team and wagon across the north-bound track into the clear space on the east side of the street, and (although he had ample time and sufficient room in which to place the horses and vehicle away from the track in a position of safety) that he either negligently allowed the animals to stand perilously near the rails, with the result that the horses (becoming frightened by the approaching car) jumped in front of the car when it was almost upon them, or that the plaintiff inadvertently pulled the horses around in front of the car; in other words, that the proximate cause of the accident was the horses lunging immediately in front of the car."

There is no question that the collision occurred, and that the defendant in error was seriously injured in consequence of it. It was the off horse that was struck, and he was hit by the car in the head and thrown back against the wagon. The car was moving with so much speed that it went on past the horses and the front wheels of the wagon, and finally stopped against the right hind wheel. The horse's feet were not inside the rail, and perhaps his head was not over the rail although within the range of the overhang of the car. The position of the horse at the instant of the collision was not inconsistent with the theory of either side.

The majority of the court, while not questioning the fact of the negligence of the plaintiff in error, under the evidence, are of opinion that the defendant in error was also guilty of negligence contributing to the injury, and that the evidence in that respect was such as that all reasonable minds should agree upon it.

Such conclusion is reached mainly by a consideration of the testimony of the defendant in error himself. He is the only witness testifying directly on his side to what he did after turning out to make room for the south-bound car. His testimony, taken from the abstract of record, bearing upon the subject of his care, is as follows:

" When the first car went by I tried to pull out on the (west) side, but could not get the hind wheels out (of the track), so had to cross over to the east side. Before I reached Eighty-seventh street, and while I was driving in the south-bound track, a car came up behind me and the motorman rang the bell and I pulled right over on the east side, to the left.

Q. Well, where did you put your horses and wagon? Now tell what happened. A. I pull right over there and stop right there on the east side, outside of the track, and the other car was coming ahead, about three or four blocks ahead; yes, what was going north; and I stop my team right there to let the other car by me, and then when I was ready to go out again he come with full force and run right into the horses, and I flew off the wagon. Before the car struck the horses and wagon the motorman did not do anything at all; I heard no bell ring; there is a little bridge there and the motorman was hollering to get out in the road, but I was too late; he was coming with full force, and I had no time to get anywhere at all; it was only about half a minute. When I pulled out of the track it was, may be half a block, may be very near a block, but not a full block, from Eighty-seventh street; the car coming from the north behind me went by and I had gone clear over on the east side of the north-bound track before I was struck.

Q. You were clear of that (north-bound) track? A. The team was then standing still.

Q. You were standing still? A. Yes.

Q. How did the car happen to strike you? were the horses in the track? A. No, not on the track at all; maybe the wheels too close to the track. I could not tell. Of course it was dark, and the car come full force and the horses get scared, maybe.

Q. How far south of you was the north-bound car when you had gotten clear over east of the north-bound track? A. How far?

Q. There was a car coming from the south? A. Yes.

Q. How far were you from that? A. It was about a couple of blocks; between two and three blocks.

Q. And you got clear of the track? A. Yes, sir.

Q. When he came by? A. Yes.

Q. Now what part of the horse or wagon did the car hit? A. It struck the horse on the right side first toward the track and killed him.

Q. How long had you been standing there before you got struck? A. Oh, it was—nothing at all; about a minute or so.

Q. This car came right up? A. Yes.

Q. And struck you? A. Yes, sir; so I was just figuring to go out on the other track again. It was coming full force so I think I might as well stand still.

Q. You are very sure that it all happened in just about a minute, are you? A. Just about that.

Q. Isn't it a fact, Mr. Sjogren, that you stood there on the driveway east of that track, and that the car which was coming north at the time you crossed over there, went by you, went past you without striking you? A. He didn't strike me at all.

Q. Sir? A. No; he don't strike me at all.

Q. He went by? A. These cars came at the same time, both of them very near when he strike.

Q. Then it was not the first car that struck you? A. No, no.

Q. When that car went by what did you do? A. I pulled out of the track for him.

Q. No, after that car went by you, what did you do? Did you still stand there? A. I stand right still there.

Q. What for? A. For I could not get out of the track; I see the car was coming ahead of me.

Q. Another car? A. Yes, that south car; it was coming ahead so I could not get out.

Q. You mean the car going south or the car coming from the south? A. From south.

Q. How far away was that from you when the first car from the south that passed you went by?

The Court: Were there two cars that came from the south?

A. Two came from the north and one from the south.

Mr. Crews: Two from the north and one from the south? A. Yes.

Mr. Landis: Q. And then after you pulled over onto the east side of the street, clear of the north-bound track, the first car that came from the south struck you, did it? A. Yes.

Q. As you stood there a car did not come from the south then and go by you, did it? A. No.

Q. Going north? A. One, yes.

Q. A car from the south? A. This was the first one that I got struck. This was the first one; only one.

Q. And that was the one that struck you? A. Yes.

Q. Had any cars passed you going north just before you were hurt? A. No.

Q. Do you remember of a car after you got over on the east side of that north-bound track, while you were standing there clear of the track, a car coming from the south, stopping by your wagon? A. Yes.

Q. And then going on without striking you? A. No, sir.

Q. That didn't happen? A. No, sir.

Q. You don't remember of a car coming down there and stopping by the side of your wagon, and your saying to the motorman and conductor, "What are you stopping for? Go on," or something like that. A. I did not.

Q. This wasn't a very dark night, was it, Mr. Sjogren? A. Oh, it was a little dark; not so much.

Q. Was there any light around there? A. No light there at all.

Q. Was there any moon? A. No.

Q. It was an ordinary dark night, was it? A. Yes.

Q. Where was the south-bound car that rang you out of the south-bound track when the motorman made the noise and made you get out? how far were you from that car when you got out? A. About a block or so.

Q. South of you? A. Yes.

Q. And no more? A. No.

Q. That car couldn't have been as far south as Ninety-third street when you got out, could it? A. Oh, no.

Q. How long were you there? A. I was there, standing there until the car came. I pull out to get my wagon out.

Q. And then the car came right along there? A. Yes, I pull out and I stop then right there."

There was no other evidence in the case more favorable to the defendant in error than his own, and unless his testimony and all proper inferences deducible therefrom show that he was in due care for his own safety, his right to have a recovery must fail.

It is thought that this evidence conclusively overcomes

the theory of the defendant in error that he was in the act of turning back to the west side of the street, or into the south-bound track, when the north-bound car crashed into him, and with equal certainty establishes that he was guilty of contributory negligence in allowing his team to stand for so long a time so close to the track, as to be struck by the approaching car that he saw, when it would have been comparatively easy for him to have placed his team in safety in the space between the track and the curb, if he wished to stand still so long.

Under the law of this State the negligence of the defendant in error can not be compared with that of the plaintiff in error.   If the proximate cause of the injury was the contributing negligence of the defendant in error, it makes no difference how great was the negligence of the plaintiff in error, and hence the question of the speed at which the car was going is immaterial, and need not be discussed.

For the defendant in error to be entitled to recover it was necessary that he himself should have been in the exercise of ordinary care for his own safety at the time he was injured.   (Calumet Iron & Steel Co. v. Martin, 115 Ill. 358.) This has not been shown according to the view of the majority of the court, and the judgment must be reversed and the cause remanded.

Reversed and remanded.