## West Chicago St. R. R. Co. v. Neil J. Shannon, Adm'r.

1. INSTRUCTIONS—*Where the Evidence is Conflicting.*—Where the evidence is conflicting upon vital issues, the general rule is that the rulings of the court, both as to evidence and instructions, should be accurate.

2. SAME—*That the Jury Are the Sole Judges of the Questions of Fact.* —An instruction that the jury are the sole judges of the questions of fact in the case, and that they should determine the same solely from the evidence which has been admitted as evidence by the court, is misleading. Questions of fact are to be determined by the jury from the evidence, but they are to be decided from the evidence under the guidance of the court in its instructions.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed February 13, 1903.

This is an action on the case by Neil J. Shannon, administrator of the estate of Albert C. Massat, deceased, against

the West Chicago Street Railroad Company to recover damages for the death of said deceased.

The declaration charges that the defendant so carelessly and improperly drove and managed a certain gripcar that it ran into a certain oil wagon on which said Massat was riding, thereby overturning the wagon and throwing Massat to the ground, and inflicting on him such injuries that he died from their effects.

The accident occurred about eight o'clock on the morning of December 22, 1897, at the intersection of Ashland and Milwaukee avenues. Ashland avenue from this point runs north and south and Milwaukee avenue somewhat northwest and southeast.

The deceased was riding on an oil wagon and driving northward on Ashland avenue. A cable train came in a southeasterly direction along Milwaukee avenue and the accident in question occurred.

The deceased left him surviving a widow and three children. A trial by jury took place resulting in a verdict and judgment for $3,900, from which judgment defendant now appeals to this court.

JOHN A. ROSE and LOUIS BOISOT, attorneys for appellant; W. W. GURLEY, of counsel.

MEEK, MEEK, COCHRANE & MUNSELL and HOWARD L. MAXON, attorneys for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Appellant relies for a reversal of the judgment in this case upon three grounds:

First. Counsel for the company assert in their argument and devote their entire reply argument to re-asserting that there is no proof whatever that the defendant owned, operated or had anything to do with the car which struck the deceased's wagon and that such an omission is fatal to the plaintiff's case. The general issue alone was pleaded. In McNulta v. Lockridge, 137 Ill. 270, a case brought to recover for personal injuries, the Supreme Court say:

"The plea of not guilty, and that only, being interposed, it could not properly be claimed that the suit of the plaintiff must fail, and for the reason, that he did not introduce at the trial a witness who could testify, from his personal knowledge, that at the time when, etc., the corporation (Illinois Central Railroad Company) sued was operating the railroad, and that the conductor, engineer, fireman and others operating the train, had been employed by the company sued, and were in fact its servants, and not the servants of some receiver or other person or corporation. In the case last stated it would be impliedly conceded by the pleadings, not only that the Illinois Central Railroad Company was a corporation, but also that at the time of the alleged injury it was operating the particular line of railroad mentioned in the declaration, and that the operatives in charge of the train being run on said road were its servants and employes."

It is true the above language was used by the Supreme Court to illustrate and reinforce its decision, but it is evident that Mr. Justice Baker of the Supreme Court considered the doctrine of that illustration good law.

This court in Richter v. Cicero and Proviso Street Railroad Co., 70 Ill. App. 196, and in Potter v. Sjorgren, 91 Ill. App. 530, has accepted the above words as apparently the deliberate utterances of the Supreme Court. Accordingly, we feel ourselves justified in holding adversely to appellant's contention, and that even though there was no testimony introduced directly to connect the defendant company with the case, yet such proof was unnecessary under the pleadings of the case. But aside from the admissions of and intendments of the pleadings, it can not be contended that the defendant company did not so conduct itself that it could be reasonably inferred that it was the owner and operator of the car in question at the time and place of the accident. There is some evidence, perhaps slight, that the defendant was merged, in a sense, in the Union Traction Company, and owned and operated the car tracks running on Milwaukee avenue. One witness states that he is still a conductor and working for the company. It may be fairly inferred that "the company," as used in the evidence, refers to the defendant, for reference was

made to no other company except the Union Traction Company. But above and beyond the apparent common understanding of counsel, trial court, witnesses and jury, that the evidence all related to the defendant company, it must be said that the defendant effectually estopped itself from denying that it owned and operated the car in question by preparing and inducing the court to give many instructions which assume that the defendant company owned and operated the car. This opinion will not be extended in reciting all the instructions of this character. Instruction number six in part is: "If you believe from the evidence in the case that the said Massat, before he was injured, saw the defendant's street car approaching the crossing," etc., and further: "That he undertook to cross said defendant's tracks," etc.

In this instruction the court, at the request of the defendant, assumes that the car in question was the defendant's street car, and that the said street car which caused the injury was on defendant's tracks.

Many other instances of admissions from defendant's instructions that the car and tracks were the defendant's, and that the car was being operated by the employes of defendant, might be cited.

The Supreme Court has held that the defendant waives his right to a peremptory instruction directing the jury to find for the defendant, if such instruction is not presented and the ruling of the court secured before general instructions for the jury are presented by him. It certainly will not be held that the defendant can impose upon the court and trifle in the closing moments of the trial by presenting instructions for the consideration of the court and jury, wherein he assumes to be an interested party, and yet afterward claim that his instructions were merely hypothetical and not based upon any evidence in the case.

We are of the opinion, therefore, that under the pleadings in this case, the evidence, and the proceedings at the trial, the defendant corporation owned and operated the car in question at the time of the accident.

Second. The second and third grounds, urged for reversal are that the court erred in rejecting evidence and in instructing the jury as to the law of the case.

These alleged errors, if they be found to exist, will not be sufficient to work a reversal, unless it is apparent from the record that the jury may have been improperly influenced thereby. To dispose of these objections, therefore, it will be necessary to examine the evidence, for where the evidence is conflicting upon vital issues the general rule is that the rulings of the court, both as to evidence and instructions, should be accurate. Caruthers v. Balsley, 89 Ill. App. 559. The evidence in the case is sharply conflicting. The testimony produced by each party is inconsistent, and in some cases the testimony of a witness is self-contradictory, so that it is impossible to reconcile the testimony presented by plaintiff or defendant upon any reasonable theory or explanation.

The accident occurred on the morning of December 22, 1897, at the center of Ashland and Milwaukee avenues. There is a street car track on Ashland avenue, and crossing it diagonally are the double cable-tracks of Milwaukee avenue. The grip-car with its train was approaching from a westerly direction on Ashland avenue, and the plaintiff riding on his oil wagon was driving on the Ashland avenue car track from the south toward and on Milwaukee avenue until the collision took place. The portion of the evidence which, under the instructions of the court, must be decisive on the question of defendant's negligence, is in narrow compass and relates chiefly to what was done by the plaintiff and defendant after the plaintiff crossed the southwesterly line of Milwaukee avenue, and after the defendant's car crossed the west line of Ashland avenue, the distance from the place of collision to the west line of Ashland and the southwesterly line of Milwaukee avenue, being about twenty or twenty-five feet. An apparently clear, intelligible and consistent statement, so far as he was allowed to testify, of the manner in which the defendant's train ran, was made by the conductor of defendant's car. In some

important particulars he contradicts defendant's as well as plaintiff's witnesses. He states that the motorman slowed down the train about one hundred feet before reaching Ashland avenue because a coal wagon and other vehicles were then crossing Milwaukee avenue, and upon arriving at the west line of Ashland avenue, the train was running at about the rate of two miles an hour, and at that point the motorman released the brake and the speed was then increased over one-half for a short distance. This testimony contradicted the statement of the motorman, who had testified that when he was at the west line of Ashland avenue he saw the plaintiff urging his horse forward to cross the track, and thereupon he put his brakes on, and that the car slid and that he did not start the car forward. This testimony of the conductor, coming from a witness apparently so candid, even to the extent of contradicting his motorman, when unexplained by the witness, seemed to corroborate plaintiff's testimony tending to prove that the motorman, though seeing the plaintiff on the track, still recklessly and with a smile on his face increased the speed of the car to " jolt the plaintiff and tip him over."

The main controversy in the evidence was over the question, did the motorman increase the speed of the grip-car after he saw that the plaintiff was in the act of crossing the track in front of him. If the motorman, after seeing the plaintiff on the track, had his car under control and could readily have stopped it before the collision, but in a reckless spirit took his chances by sending his car forward with accelerated speed, and thereby struck the plaintiff, the defendant would be liable. There was some evidence tending to show that plaintiff was on the track when and even prior to the time that the grip-car reached the west line of Ashland avenue, and under those circumstances the statement of the conductor that the motorman increased his speed within twenty feet of the place of collision would doubtless have great weight with the jury; but the point over which there was greatest conflict of testimony was as to where was the plaintiff at or just prior to the time when

the cable car arrived at the west line of Ashland avenue. There is some evidence in the case tending to show that just prior to and at the time the cable car was on the west line of Ashland avenue, the plaintiff had stopped his wagon, but immediately thereafter, and so soon as the cable car had started across the west line of Ashland avenue with accelerated speed — immediately thereafter and almost simultaneously therewith, the plaintiff whipped up his horse to pass in front of the car. If this was the fact, and the motorman, after noticing that the plaintiff was attempting to cross, at once applied his brakes and did all in his power to stop, it would scarcely be claimed that under such circumstances the defendant would be liable. Now on cross-examination the said conductor told the jury that, "from the time the car was twenty feet away until it struck the man it increased its speed over one-half. It increased its speed for a short distance." On the direct examination the conductor had made no such statement, and unexplained, it tended at least to corroborate the alleged reckless and wanton conduct of the gripman. On re-direct examination counsel for defendant asked the conductor in explanation of the foregoing testimony this question:

Q. "When the car started up and increased its speed a little in that twenty feet, where was the man and the oil-wagon?"

And again: ·

Q. "Where was the car when it slackened its speed inside of the twenty feet? where was it with reference to where it struck the oil wagon?"

Again:

Q. "Had the man started to cross the car tracks when the car started up the second time?"

Again:

Q. "Explain what you mean when you said to Mr. Meek that after you had slowed down to about two miles an hour you increased the speed to about four miles and then slowed down."

Objections to each one of these questions were made by

plaintiff; objections sustained; to which rulings of the court defendant excepted.

So vital and weighty was the testimony of the conductor that for the purpose of a fair trial the court should have allowed him to explain in detail the movement of the car over the twenty feet just prior to the collision. In the minds of the jury his evidence could have been held to corroborate the statement of one of plaintiff's witnesses that the gripman increased the speed of the car after he saw that the plaintiff was crossing the track.

In judicial proceedings to compel a defendant to pay money, the demands of a fair trial are that the defense be fully heard. It is evident from the record of this case that opinions of witnesses were heard and accepted as evidence; one witness testified that the gripman was smiling and intended to give the deceased "a jolt and tip him over." The opinion of the witness as to what the motorman intended to do was doubtless without foundation and yet its force and effect upon the jury depended upon the demeanor and apparent character of the witness and ought certainly never to have been uttered in the presence of the jury.

The record further discloses that one of plaintiff's witnesses stated that the car was within fifteen feet of the plaintiff as he drove upon the track, but was allowed, as was proper in a fair trial, to return to the witness stand the next day and correct her statement. So in the said matter of refusing to admit further interrogation of the conductor, we are of the opinion that the court committed harmful error in refusing to allow the said questions, or sufficient of them, to be answered, to make clear his said testimony, for as it was left unexplained it was clearly susceptible of misconstruction.

Third. It is further insisted that the court erred in instructing the jury as to the law of the case. Where error is committed in not ruling correctly upon admission of evidence the effect of the error is intensified if the jury is not correctly instructed, and where evidence is sharply conflict·

ing, as in the case at bar, the rulings on instructions must be strictly accurate.

The court, at the request of the plaintiff, instructed the jury as follows:

"The jury are instructed that they, the jury, are the sole judges of the questions of fact in this case, and they should determine the same solely from the evidence which has been admitted as evidence by the court."

In C., B. & Q. R. R. Co. v. Greenfield, 53 Ill. App. 424, the following instruction was disapproved:

"The jury are instructed that the questions of care or want of care, and the negligence or want of negligence of the defendant, and of the deceased, are questions of fact for the jury to decide under all the evidence in the case, and all the facts and circumstances as shown by the evidence."

These two instructions are substantially alike. It is true questions of fact are to be determined by the jury from the evidence, but they are to be decided from the evidence under the guidance of the court in its instructions. The only tendency of this instruction would be to impress upon the jury their supremacy upon questions of fact. It was unnecessary, could serve no good purpose and was misleading in its character. The jury are not, as they were told in the instruction in the case at bar, the sole judges of questions of fact in the case, but they are bound to apply the law to the facts as instructed by the court, and it is therefore not for the jury to do with the facts which they may find from the evidence, as they please, regardless of the instructions of the court as to the law. The court, not the jury, is the judge of the legal effect of the facts found from the evidence by the jury. Chic. Gen. Ry. Co. v. Novaeck, 94 Ill. App. 178. The Supreme Court, in Chi. City Ry. Co. v. Roach, 180 Ill. 174, did not, as contended by counsel for appellee, overrule C., B. & Q. R. R. Co. v. Greenfield, supra, but held that the jury are, in determining questions of fact, bound to observe the rules of law as stated to them in the instructions, and further held that it was not necessary that such rules for the guidance of the jury should be

stated in each instruction. In that case the jury were given the law by which they were to be governed in determining the particular facts referred to in the instructions there given. In the case at bar the jury were told that they were the sole judges of all the facts, and to say that this instruction is correct, it would be necessary to determine whether the law applicable to all facts in the case was stated in the instructions. Counsel for appellee have not shown and we shall decline to scrutinize this long record to determine whether the court gave the law to the jury touching each and all questions of fact of which the court told the jury they were the sole judges.

Objections to appellee's second instruction we think are not well founded. It told the jury that they should not be influenced in the slightest degree in regard to any of the facts in the case or any statement of counsel on either side unless sustained by evidence. This instruction did not prevent an argument to the jury based upon the evidence of the case, nor did it prevent counsel from indulging in reasonable comment upon the absence of witnesses whose presence was evidently required by the exigencies of the case. If counsel desired to have the law applicable to any fact stated to the jury it was their privilege to prepare in writing and request the court to give such instruction. However, in view of the sharp conflict of evidence in this case and the erroneous rulings of the court upon admission of evidence and the giving of a misleading instruction, we are of the opinion that the judgment should be reversed.

The judgment of the Circuit Court is reversed and the cause remanded.