## Chicago Union Traction Company v. Joseph Straud, Administrator, etc.

### Gen. No. 11,197.

1. PASSENGER—*what essential to entitle recovery by, for personal injuries.* Where a passenger upon a street car is thrown therefrom and injured, it devolves upon him to show some negligent act of the carrier in order to sustain a recovery.

2. PROVINCE OF JURY—*when instruction upon, is erroneous.* An instruction as follows: "The jury are instructed that they, the jury, are the sole judges of the questions of fact in this case, and the court does not, by any instruction given the jury in this case, intend to instruct the jury how they should find any question of fact," is erroneous in that its tendency is to make the jury feel independent of the court and find the facts without reference to the proof before them and without reference to the law of the case.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Reversed and remanded. Opinion filed June 17, 1904.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

CHARLES VESELY and DEVINE & O'CONNELL, for appellee; A. MORRIS JOHNSON, of counsel.

MR. JUSTICE STEIN delivered the opinion of the court.

This is an appeal from a judgment of $4,000, recovered by appellee against appellant for its alleged negligent killing of appellee's intestate, Anton Beranek, a boy fifteen and one-half years old at the time of his death.

The deceased was a passenger upon a train of electric cars, consisting of an open motor-car and a trailer, belonging to appellant and running north on Western avenue in the city of Chicago. There are two tracks on the street, the east one being used by the north-bound cars and the west one by the south-bound. The deceased boarded the train near Twenty-second street and seated himself on the extreme west side of the rear seat on the motor-car, facing

south, and therefore riding backwards.  Just north of Six-
teenth street there is a slight curve in the tracks extending
for about thirty feet and amounting to about one-eighth of
a degree in variation.  At the end of the curve the boy fell
from the train in such a manner that he dropped between
the motor-car and the one behind it and the wheels of the
latter passed over his body at the waist.  He died soon
afterwards.

The theory of the plaintiff is that the boy was thrown
from the car through some negligence on the part of appel-
lant in running the train.  It is not claimed that the mere
fact of his falling from it is sufficient to show such negli-
gence or raise a presumption to that effect.  Appellee tacitly
concedes the law to be that it devolved upon him to show
a negligent act of appellant.    So the courts have often held.
Benedick v. Potts, 40 Atl. Rep. 1067, S. C., 41 L. R. A. 478;
Paynter v. B. & M. Traction Co., 67 N. J. Law, 619; C. &
A. R. R. Co. v. Mock, 88 Ill. 87.   The negligence is alleged
to have consisted in running the train over the curve at a
high rate of speed and in permitting a certain chain, some-
times stretched from the dashboard of the car to the arm of
the seat on which the boy was sitting, to be loose, and dan-
gling to the floor of the car.

Appellee called two eye-witnesses to the accident.  One
of them was the conductor of the motor-car, who testified
that the train was moving between six and seven miles an
hour and was stopped within twenty feet from where he
gave the signal.   Appellee's other witness, Tom Gorman, a
pedestrian, who was on the sidewalk, thought the car was
going fourteen or fifteen miles an hour.   Yet, he also says
that the train ran only a car length and a half before it
was stopped.   On behalf of appellant, the motorman agreed
with the conductor of his car that the speed was six or
seven miles an hour and that he stopped the car in about
twenty feet.   The conductor of the trailer gave the speed
at about five or six miles an hour, at the most seven, and
that the car ran about twenty-five feet before stopping.
A. C. Metzner, who was walking on Western avenue, said

that the car was not running very fast, only a little faster than he could run, and that it passed beyond the spot where the boy was lying about a car length, twenty-five or thirty feet, before it stopped.   Mrs. Moore, a passenger on the trailer, stated the car was not moving very fast at the time she saw the boy fall.

The great -preponderance of the evidence is that the train was going much more slowly than usual.   This, as the motorman explains, was due to the curve where he "always slacked up so as not to have any danger there. * * * No matter how fast we run before we get there we slack up."   Even if the speed was what the witness Gorman swore it was, there is no positive evidence that the rate of speed caused the boy to fall from his seat to the ground.   Appellee's witnesses simply swear to the fact of the accident.   Their testimony begins with seeing the boy fall and does not disclose or bear upon what it was that made him fall.   There is no proof of any jerking or lurching.   So far as appears, none of the other passengers was in any wise hurt, moved or shaken.   None of the witnesses speaks of a jerk.   Gorman says he heard a "bump;" but this, as he testifies, was the "bumping," not of the train, but of "the chain on the west side of the first car."   The curve, as shown by the diagram in evidence, is very slight; and it is against all human experience that the boy, if he was thrown out of his seat at all, should be tossed forwards.   The lateral motion of the car if strong enough would have thrown him sideways against the arm of the seat, and he would naturally and involuntarily have seized that arm to keep himself from being thrown out.   Yet appellee's own evidence establishes (as to which, indeed, there is no conflict) that the boy's motion was towards the rear of the car and that he fell down between it and the one following.   The train was moving north.   Deceased was seated on the rear seat of the motor-car, facing south.   The conductor of the car, called by appellee, testifies:   "When I saw this man falling he had hold of the hand-rail of the dashboard.   He was facing south.   His back was to the

north. The car was going in that direction. His body was leaning out. He held on to the hand-rail with the left hand. His body fell down between the cars. His feet went in and his head went out. That is the position he was in when I found him afterwards."

On the west side of the car, stretching from the dash-board to the arm of the seat on which deceased was sitting, was a chain permanently fastened at one end. The other end was hooked with a spring so that the chain could be fastened up or dropped down as occasion might require. The parties are not agreed as to what the chain was for. Appellant claims that its sole object was to prevent the passengers from boarding the car from that side so that when it was going north the chain would be up and when going south it would be down. On the other hand appellee contends (and the proof to some extent sustains him) that the chain served as a guard rail to protect passengers from falling off and that appellant was negligent in permitting the chain to be down at the time of the accident. Conceding the latter contention to be correct, nevertheless it is not perceived how appellee's case is helped thereby even if the chain was down. The fact that it was down had nothing to do with the accident. It did not cause it nor contribute to it. As we have seen, the boy did not fall from the car sideways, but in a direction opposite to that in which the car was moving. Besides, the uncontradicted evidence is that the chain was properly fastened up when the train left Twenty-sixth street, a point about a mile south from the place of the accident, and that the deceased himself opened the chain and unloosened it from its fastenings.

There is testimony in the record tending to show that the boy attempted to step from the car on which he was riding to the trailer immediately in front of him and that in doing so he lost his foothold and fell under the car. Whether the accident occurred in this way or not, it was for appellee to prove that he came to his death through the negligence of appellant. Herein his proof failed and the verdict is not supported by the evidence.

For appellee the court gave the following instruction: "The jury are instructed that they, the jury, are the sole judges of the questions of fact in this case, and the court does not by any instruction given the jury in this case, intend to instruct the jury how they should find any question of fact." This instruction should not have been given. It has been frequently condemned for its tendency to make the jury feel independent of the court, and find the facts without reference to the proof before them, and without reference to the law of the case. C. G. Ry. Co. v. Novaeck, 94 Ill. App. 178; C., B. & Q. R. R. Co. v. Greenfield, 53 Ill. App. 424; C. N. S. Ry. Co. v. Hebson, 93 Ill. App. 98; W. C. St. R. R. Co. v. Shannon, 106 Ill. App. 120. Nor was the vice of the instruction cured by others.

The judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*