## Chicago Union Traction Company v. August Lundahl, administrator, etc.

### Gen. No. 11,581.

1. GENERAL ISSUE—*what admitted by plea of.* In an action on the case the plea of the general issue admits ownership and operation as alleged in the declaration where the case is tried upon the theory of ownership and operation by the defendant.

2. PASSENGER—*competency of evidence to establish status as.* It is competent to show the possession of sufficient money to pay fare as tending to establish the status of the plaintiff as a passenger.

3. VERDICT—*what essential to justify disturbance of.* In order to make it the duty of the Appellate Court to set aside a verdict as contrary to evidence, there must be such a clear preponderance in favor of the appellant as to make such verdict wholly unjustifiable.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed November 28, 1904.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

SAMUEL COHEN and WOOD & ELMER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court in favor of appellee against appellant company for $3,500, rendered on the verdict of a jury.

The action was brought against the appellant for causing, by negligence, the death of the plaintiff's intestate, a boy of the age of ten years, one Herbert S. Lundahl. The declaration charges that the boy was on November 16, 1901, in North Clark street at the corner of Elm street, using the said public highway as a pedestrian, for the purpose of becoming a passenger on one of the defendant's cable cars on North Clark street, and while so on the public highway, using all due care and diligence for his own safety, the defendant, by its servants in charge of a grip car and another constituting a cable train, running south on North Clark

street, when nearing and reaching Elm street, so negligently managed said cable train that he was struck and hit and dragged and knocked down to the ground, the wheels of one of the cars passing over him and killing him.

A plea of the general issue was filed to this declaration, and a trial of the issue resulted in a verdict finding the defendant guilty and assessing the damages at $3,500. A motion for a new trial and in arrest of judgment were overruled by the court below, and judgment entered on the verdict, from which an appeal was taken to this court, and numerous errors assigned. Three grounds only, however, for reversal are urged in argument by appellant, each of which we will consider.

One is that the evidence does not support the verdict, because it fails to show that the defendant owned or operated the railroad on which the accident occurred.

This court, following an apparently deliberate dictum in the opinion of the Supreme Court of Illinois in McNulta v. Lockridge, 137 Ill. 270, introduced by way of illustration, has more than once decided that the plea of the general issue to a declaration of this character, admits the ownership and operation of the road. Counsel for appellee say that the doctrine is not binding on this or any other court, and that it has been so held by the Appellate Court of the Third District, which thereby has more correctly stated the law concerning the effect of a plea of the general issue than has this court. The case cited from the Appellate Court of the Third District, Cincinnati, H. & D. R. R. Co. v. Goodson, 101 Ill. App. 123, scarcely bears out to the full the contention of counsel. The learned judge simply points out that it could not be fairly inferred from Mr. Justice Baker's words in McNulta v. Lockridge, that he thought that testimony offered by the defendant that it was not the owner and operator of the road or train in question, should be excluded under the general issue, but only that in case neither plaintiff nor defendant introduced or offered any evidence on the subject, it would be considered as impliedly conceded by the pleadings, when nothing but the general

issue was filed, that the defendant at the time of the alleged injury *was* operating the particular line of railroad mentioned in the declaration. The two propositions are very different, and whether or not the position of Judge Baker was logically in accordance with the rules of pleading, there can be little said against its justice and expediency. But we are not, in this case, obliged to pass on the obligation of this court to follow this dictum or to adhere to its previous statements concerning it. Certainly when the general issue is alone pleaded, and the cause is tried, as the court says in West Chicago St. R. R. Co. v. Shannon, 106 Ill. App. 120, on the apparent common understanding of counsel, trial court, witnesses and jury, that the evidence all related to the defendant company, this court will not require any great amount of evidence in this regard to enable it to support the judgment attacked on the ground that the defendant company had not been connected with the accident. Indeed, not in a dictum, but in a decision fairly upon the point, the Supreme Court has said : " Where a case is tried throughout on the apparent theory that defendant was in possession of the road and the men in charge of the hand-car were its servants," and " no objection was made or suggestion of the want of direct proof of these facts before the return of the verdict, both the court and jury were warranted in proceeding upon the theory that the proprietorship of the railroad and the relation of the men in charge of and operating the hand-car with the defendant were uncontroverted, and that there was no issue, as there was in fact no real contention in respect to such facts." Lake Erie & Western R. R. Co. v. Wills, 140 Ill. 614. And in Chicago City Ry. v. Carroll, 206 Ill. 318, cited by appellant in its reply brief, the Supreme Court, declining to pass on the language of the court in the Lockridge case, says slight evidence will be sufficient, uncontradicted, to support the allegation of ownership and operation. Such evidence as is necessary we think it quite easy to find in this record.

The suit being against the Chicago Union Traction Com-

pany, Charles Bouland was introduced by that defendant as a witness. He was asked by the defendant's counsel whether he was the motorman on the street car on North Clark street in November, 1901, when an accident happened to a little boy, and answered that he was. On cross-examination he was asked: "Are you working for the company now?" and answered "Yes, sir."

Of course the jury would be justified in assuming that "the company," to which the question as to his present employment referred, was "the company" for which he was working at the time of the accident, and we think they were equally justified in assuming that it was also "the company" which was sued—the only company which the pleadings named, and "the company" which was then present in court by its counsel, defending the case on the facts of the accident.

Counsel for appellant in their reply brief point out that not only instructions which were asked by defendant and refused, but also instructions that were given at the request of the defendant, such as instruction thirteen, which was given as modified, and twenty-two, which was given as asked, speak of the cable train in question as the train of defendant in charge of servants of defendant.

In his address to the jury, preserved in the bill of exceptions, the counsel representing the defendant corporation, without alluding even to the existence of any other street car company, declared that "the street car company was moving its car along the street and was exercising ordinary care"—a proposition he proceeded to elaborate. What street car company was the jury to understand he meant, but the street car company which he represented and for which he was making his argument? This in itself would have been an admission of the ownership and operation, we think. This contention of the appellant concerning the insufficiency to sustain the verdict of the evidence concerning the ownership and operation of the train inflicting the injury, is entirely without merit.

Another alleged error insisted on, is that evidence was

improperly admitted over objection, that Ernest Anderson, the cousin of the deceased and his companion at the time of the accident, had with him at that time twenty cents given him by his mother. Counsel for appellee, the plaintiff below, asked the witness, also, what his mother said in giving him the money, which, on objection by the appellant's counsel, was ruled out. We do not think that there was any error in the admission of this evidence, but on the contrary think it might well have been held erroneous to exclude it. This case was tried on the theory on the part of the plaintiff, that the two boys, Ernest Anderson and Herbert Lundahl, both at that time, it would appear, about eleven years old, went to a place where cars of the defendant were supposed to stop for passengers if desired, with the intention of becoming passengers; that they were then desiring to go from the house of the former on North Clark street, to the house of the latter in Austin avenue on the west side, and that having been practically invited to board the train by its greatly slackened speed in answer to the signal of one of the boys, they attempted to do so, and that while one of them succeeded, the other, by a sudden start of the cars, was thrown under the wheels and killed. On the other hand, the case was tried on the part of the defendant on the theory, as stated in its argument here, that the two boys were—or at least the deceased was—trying to "flip" the car; that is, he was not attempting to become a passenger on the car, but was trying to jump on it for fun while it was crossing the street intersection. When the question for the jury was, which of these two contradictory theories was correct, and the examination and cross-examination respectively of the witnesses was directed to establish one or the other, we think it might well be highly material and relevant to show, as a circumstance assisting the jury to decide the issue, the possession of sufficient money by either of the boys with which to pay their fare. Citations of cases to the effect that possession of a railroad ticket or pass by a person who attempts to board a train, does not constitute him a passenger on such

train, are manifestly beside the point under discussion here. If the evidence even were inadmissible, as we do not think it was, it could only have been on the grounds of its immateriality and its admission could not have been prejudicial or made a reversible error. The question before the jury was not whether or not the deceased was a passenger, but whether or not he was a trespasser and guilty of contributory negligence. The instructions fairly stated the issues and the law affecting them to the jury, and in those which treated of the effect of the alleged negligence of the defendant there was nothing which could have led them to suppose that the possession of money sufficient to pay his fare by one of the boys, at all altered defendant's duty. Nor could the proof of it have inflamed or otherwise injuriously affected the minds of the jury. It is quite plain that if the evidence were material on the issues involved, it should have been admitted, and that if it were immaterial, it was not of a character to do harm.

The final and most important of the contentions of the appellant is that the verdict is not supported by the evidence, in that it neither shows that the defendant was negligent in the operation of its train, nor that the deceased was, at the time of the accident, exercising ordinary care for his own safety, considering his age, intelligence, experience and ability. Of course, if as to either of these propositions the record were entirely deficient in evidence to support it, or even if as to either, there were such clear preponderance of evidence in favor of appellant as to make the verdict of the jury wholly unjustifiable in our eyes, it would be our duty to set aside the judgment. Notwithstanding this undoubted power and duty, it is still true, as the Supreme Court said in Borg v. Chicago, Rock Island and Pacific Railway Company, 162 Ill. 348, that "parties have the right to submit controversies of fact to a consideration of a jury, and the successful party gains all the advantages and benefits following a verdict under the well-established rules of the courts, arising from superior opportunities to judge of the credibility of witnesses." And

it is only, as the court in the same case proceeds to say
substantially, when with all these advantages accorded to
the successful party, it appears to the Appellate Court that
the recovery should not be allowed to stand, that the find-
ing should be disregarded and the judgment reversed.
Such is not our view of the present record. The evidence
was conflicting, and, in some matters, irreconcilably so.
The difference, however, as to some relevant facts is as
great between appellant's witnesses as between them and
the appellee's witnesses. The testimony of the boy, Ernest
Anderson, was that on November 16, 1901, between one
and two o'clock in the afternoon, he started with his cousin,
the deceased, a boy smaller than himself, and about the same
age (they were both about eleven years old), to go from
witness's home on North Clark street, at the corner of Di-
vision street, to the deceased's home at the corner of Eliza-
beth street and Austin avenue on the west side; that they
walked to the corner of Elm street—the next street south
of Division—and stopped on the southwest corner of Clark
and Elm streets, a place which the motorman or gripman
testified was a place where the cars stop on signal for pas-
sengers that want to ride, and where it was usual for people
to arrange themselves; that they saw the car coming when
it was up at Division street; that witness held out his hand
to stop the car; that it stopped "slow like, still," and that
witness got on the front platform of the first of the two
trailers—the one next to the grip-car—while the train was
moving slowly; that the deceased waited until the rear end
of the same car came up to him, and then tried to get on the
rear platform; that this was in front of the cigar store at
the southwest corner of Elm and Clark streets; that the
deceased took hold of the rail or bar on the body of the car
with one hand, and had one foot on the step, when the
train started up quick, "went quick," and deceased was
by the jerk thrown off the car and fell under the wheels
and was killed; that the train then ran on for some distance
and stopped on a signal of two or three bells (which the
gripman afterwards testified was the emergency signal),

and that the boy's body was then lying south of the crossing and opposite the cigar store, as the witness would judge, four or five feet south of the southern street crossing.

This testimony by itself, if believed by the jury, would certainly justify the jury in finding, as they did, in the special findings submitted to them by the court, " that the deceased was just before and at the time of the accident complained of, in the exercise of such care for his own safety as might be reasonably expected from one of his age, intelligence, experience and capacity," and " that the defendant was guilty of the negligence charged against it in the declaration," and as a result of these findings, of course, a verdict for the plaintiff would follow.

The Supreme Court said, in Cicero & Proviso Street Railway v. Meixner, 160 Ill. 320: " It is well known that street car companies tacitly invite many passengers to board and alight from their cars by checking up to a slow rate of speed, and immediately starting up at a greater speed when the passenger is safely aboard or has alighted. * * * We cannot say that it is inconsistent with ordinary care and caution for a person to board a street car while in motion. Whether one has not exercised due care and caution in so doing is to be determined by the particular circumstances in each case, and is therefore a question of fact to be submitted to the jury."

Counsel for appellant in their argument to us lay stress on the fact that the witness was very young and related to the deceased and plaintiff. But that a jury should judge of the credibility and of the degree of confidence to be given to the testimony of each witness, is precisely one of the advantages and benefits accruing to the plaintiff from his right to a jury trial, the Supreme Court says in the Borg case, *supra.*

The testimony of Ernest Anderson is confirmed by appellee's witness, Roy Jones, another small boy who was less than ten years old at the time of the accident, in the most essential particulars. He says he was playing in front of his house, (there is confusion in the record, not shown in

the abstract, as to whether it was east or west of Clark street,) on Elm street, (not on Division street, as appellant's brief says,) three or four doors from Clark street; that he saw the two boys waiting on the corner; that he saw the deceased getting on the rear platform of the second car; , that the car was then going a little—moving slowly—and the car "started up swift," "started up quick," and he slipped and fell under the car and the last car ran over him. " He was just going to get on and it started too quick and he fell off." "The car started up too fast and gave a jerk and threw him under."

This witness differs from Ernest Anderson on relevant facts only in asserting that the latter got upon the grip-car instead of the front platform of the first trailer; and in that in answer to a question by defendant's counsel whether it was about the middle of Elm street he saw the deceased's body lying, he said "Yes." Counsel say that this witness did not understand the nature of an oath, but he showed by his answers an appreciation of what happens to liars, and the jury were the proper judges of the confidence to be put in his story.

George Douglass, another witness for appellee, and an adult, testifies that he was walking south on North Clark street at the time of the accident; that he waited at the northeast corner of Elm and North Clark streets for this cable train to go by; that the train passed him and when the grip-car passed him was going "pretty lively;" that he noticed the two boys on the southwest corner of the street in front of the cigar store; that they stepped out into the street from the sidewalk; that one of them raised his hand, as if signalling the car; that when the car crossed the north line of Elm street it had begun to slacken up and came almost to a standstill at the southwest corner, " to almost a dead stop;" that it remained at almost a dead stop momentarily, then "suddenly it shot out again;" that the rear end of the last car was opposite the cigar store at the corner when it thus suddenly started forward, and that it then ran on south about a hundred feet or more to the middle of the

block, and stopped, and that the witness then saw the boy's body lying across the track, he should think about forty-eight feet south of the intersection of the streets.

The appellant's first witness was the gripman, who swore that he stopped his train at Division and North Clark streets and then, after there starting, gained full speed about the middle of the block between Division and Elm; that he looked to see if there was anybody at the southern crossing of Elm street; that he did not see the deceased nor anybody else; that he crossed Elm street at very near full speed, and did not stop nor slacken until he got the emergency signal about 100 feet south of Elm street, when he pulled both brakes and stopped as quick as he could; that he then went back and found the deceased's body about eight or ten feet north of the crossing.

The conductor on the first trailer confirmed this testimony as to there being no stop of the car between Division street and the point south of Elm street where he received the emergency signal from the conductor of the last trailer, and as to the position of the boy's body when found. He does not say that he looked for passengers at the corner. He does say that there was no boy on the first trailer when the emergency bell was rung.

The conductor on the last trailer testified also that the train went at full speed across and beyond Elm street, and that feeling the bump of the car caused by the wheels going over the body, he looked out, saw the body, and gave the emergency signal. He says also that the body was found ten or fifteen feet north of the southern line of Elm street.

If the foregoing was all the testimony in the case, such a direct and irreconcilable conflict would be presented that this court would feel that it was for a jury, who had the witnesses before them, to determine which story was true, and that if the law was properly given by the instructions, and the record free from material error in the admission of evidence, the finding should not be disturbed; and it seems to us the case is made no stronger for such interference

when the testimony of the appellant's three other witnesses is considered.

One was one Schmittendorf, who says he was at the time of the accident on a wagon going north on North Clark street, a hundred and fifty feet or so south of Elm street; that he saw but one boy, who was on the north corner of Elm street when first seen; that he saw no other boy with him or near him; that the boy ran straight for the car—the first trailer—reached it, ran alongside of it for a couple of steps, caught hold of the back platform, slipped when he had one foot on it, and fell between the second and third cars, so that the last went over him; that the body after the car passed over it lay near the center of the intersection of Elm and Clark streets; that the car didn't stop, but went right through from somewhere between Division and Elm streets to a point pretty near half way between Elm street and the next street south.

Another was John Spoor, a boy of fourteen, who testified that at the time of the accident he was about seventy-five feet south of Elm street on North Clark street; that he saw two boys running across Clark street right about the middle of Elm street, toward the car; that one of them got on the grip-car and stayed on, and the other ran towards the front platform of the first trailer, caught on there, stayed there a second, jumped off and tried to catch the front platform of the rear trailer, caught one foot on it, without touching the car with his hands, tripped and fell and got under the wheels, and that his body after the car passed over it lay opposite the curb line of the sidewalk on the south side of Elm street. He further testified : "The car was going about half speed. It began to slacken down to half speed from the north side of Elm street. It was not going so very slow—about half speed. It slackened down because it stopped for some one to get on at Elm street. They didn't get on—the boy tried to get on first. He was run over before the person could get on. The car didn't stop right close to Elm street crossing; it stopped about fifteen feet south. The person that was

waiting there did not get on. I don't remember whether it was a man or a woman. It has been a good while since I have thought anything about it, but I know there was a passenger there, and they slowed down for that passenger."

The remaining witness for the appellant was one Robert Kulp, who only testified that after the accident, which he did not see, the body of the boy lay about ten or eleven feet north of the south crossing of Clark and Elm streets, that is, that number of feet north of where foot passengers on Elm street cross Clark, and that the train was pretty close to that south corner, the last car about over the crossing, not over ten feet from the corner.

It can be easily seen that these three witnesses contradict, as well as confirm, the train crew and each other.

In this conflict of testimony, we think the proper course for this court is to accept the finding of the jury on the facts as final, and therefore the judgment is affirmed.

*Affirmed.*